IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:08CV84-V-2
(5:04CR28-7-V)

| | |
|---|---|
| **DONALD DAVID ELLISON,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255, filed July 31, 2008. For the reasons stated herein, Petitioner's Motion will be <u>denied</u> and <u>dismissed</u>.

## I. FACTUAL AND PROCEDURAL HISTORY

On December 14, 2004, a multi-count Third Superceding Bill of Indictment was filed, charging Petitioner (along with five others) with conspiring to possess with intent to distribute methamphetamine, in violation 21 U.S.C. §§ 841(a)(1) and 846 (Count One); and charging him with having possessed, or having aided and abetted the possession of, Pseudoephedrine with the intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. (Count Eleven) (Case 5:04CR28-7-V, document # 66). In addition, the Indictment alleged that

1

Petitioner's conduct involved at least 1.5 kilograms of actual methamphetamine and created a substantial risk of harm to the environment; and that Petitioner's conduct involved the possession of one or more firearms, all in violation of United States Sentencing Guidelines §§ 2D1.1(c)(1), 2D1.1(b)(5)(B), and 2D1.1(b)(1).

On January 29, 2005, Petitioner made an initial appearance before the Court. On that occasion, the Court advised Petitioner of the charges which he was facing and explained the potential penalties for such charges, including the **minimum mandatory ten year term** which was applicable to Count One.

Although he initially pled "not guilty" to the charges, on March 4, 2005, Petitioner appeared before the Court for a Plea and Rule 11 proceeding in order to tender his "straight-up" guilty pleas to Counts One and Eleven. During that proceeding, the Court placed Petitioner under oath and engaged him in its standard lengthy colloquy to ensure that his guilty pleas were being intelligently and voluntarily made.

By his sworn responses to the Court's numerous questions, Petitioner established that he had received a copy of the Indictment and had discussed it with counsel; and that he understood the Court's explanation of the charges and their elements. (Plea Tr. 6, filed October 16, 2008, document # 218). Moreover, Petitioner's answers established that he understood that he was fac-

2

ing a statutory **mandatory minimum term of ten years** up to life imprisonment on Count One and a statutory maximum term of up to 20 years on Count Eleven. (Plea Tr. 7). Petitioner also told the Court that counsel had spoken with him about how the Sentencing Guidelines might apply in his case; that he understood that the Court would not be able to determine his sentence until after his Pre-Sentence Report had been prepared; that he understood that in some circumstances, he could receive a sentence that was different from that called for by the Guidelines; and that he understood that even if he received a sentence which was more severe than the Government's recommendation, such fact would not have given him the right to withdraw his guilty pleas. (Plea Tr. 7-8).

Petitioner's answers further established that he understood his rights to plead "not guilty" and proceed to trial; that by entering guilty pleas, he was waiving his right to trial; that he had taken enough time to discuss possible defenses with counsel; that he was tendering guilty pleas because he, in fact, was guilty of the subject offense; that no one had made him any promises of leniency or a light sentence in order to induce his guilty pleas; and that no one had threatened, intimidated, or otherwise forced him into pleading guilty. (Plea Tr. 9-10 and 14-15). Finally, Petitioner's answers established that he was satisfied with the services of his attorney, and he had no

3

questions or comments for the Court. (Plea Tr. 15). Thus, at the conclusion of that proceeding, the Court accepted Petitioner's guilty pleas. (Plea Tr.16).

On May 31, 2005, Caryl Cannella, United States Probation Officer, filed a Notification of Pre-sentence Report ("PSR" hereafter) advising the Court that Petitioner's PSR was complete. (Case No. 5:04CR28-7, document # 114). The PSR reflects that although the conspiracy involved more than 1.5 kilograms of actual methamphetamine, Petitioner was accountable for involvement with 50 grams but less than 150 grams of that drug; therefore, his combined Base Offense Level for Counts One an Eleven was 32. (PSR 8, filed November 16, 2006, document # 204)

However, the PSR also indicates, based upon Petitioner's straight-up guilty pleas to the allegations set forth in the Indictment, that he was subject to a two-level enhancement under U.S. Sentencing Guidelines § 2D1.1(b)(1) for the presence of an armed co-defendant at the methamphetamine manufacturing location where he was arrested; and that he was subject to a three-level enhancement under § 2D1.1(b)(6) based upon the substantial risk of harm to human life or the environment which was posed by his unlawful conduct. (PSR 8-9). After giving Petitioner full credit for his acceptance of responsibility, his Total Offense Level was 34. (PSR 9). It further was determined that Petitioner's Criminal History Category was III; therefore, his

recommended corresponding Guidelines sentencing range was 188 to 235 months. (PSR 11, 16).

On June 20, 2005, the Court conducted Petitioner's Factual Basis and Sentencing Hearing. At the outset of that proceeding, Petitioner confirmed that he had appeared before a magistrate judge and entered his guilty pleas; that he understood the charges and penalties; that his guilty pleas freely and voluntarily were tendered; that he pled guilty because he had committed the subject offenses; and that he still was satisfied with the services of his attorney. (Sent'g Tr. 3, filed December 6, 2006, document # 205). Accordingly, after the parties stipulated to the existence of factual bases for the pleas, the Court reaffirmed its acceptance of the pleas and adjudged Petitioner guilty. (Sent'g. Tr. 4).

Next, the Court entertained defense counsel's objections to the firearm and environmental enhancements identified in the PSR. Particularly, defense counsel argued that Petitioner never had owned or possessed a firearm, and that given the small increments in which the meth was manufactured and the remoteness of the manufacturing location, there was no basis to conclude that Petitioner's conduct posed a substantial risk of harm to human life. (Sent'g Tr. 4-5).

In response, counsel for the Government argued that to be applicable, the firearm enhancement did not require Petitioner's

5

actual possession of the gun, but his knowledge of his co-defendant's possession of it; that the PSR also contained evidence of the possession of firearms by other co-defendants of Petitioner's during the course of the conspiracy; and that Petitioner also was present during the execution of a search warrant at a location from which both a loaded shotgun and drugs were seized. (Sent'g. Tr. 6-7). As for the other enhancement, the Government argued that Petitioner was not merely a small-time user/manufacturer, but was a manufacturer in an in-depth conspiracy which repeatedly manufactured methamphetamine; that the actual manufacturing process involved harm to wildlife and to humans due to the fumes which were produced; and that a hazardous chemical team had to clean up the site at considerable time and expense to the Drug Enforcement Administration. (Sent'g. Tr. 7-9).

Not surprisingly in light of his guilty pleas, the Court considered the arguments and overruled defense counsel's objections finding, instead, that the enhancements properly were recommended and supported by a preponderance of the evidence. (Sent'g. Tr. 9). Thereafter, defense counsel asked the Court to impose the statutory minimum ten-year term on the basis of Petitioner's having first pled guilty, his limited criminal history and the fact that he was in the position to cooperate but for his having undergone a course of in-patient drug treatment

6

therapy. (Sent'g. Tr. 10-12). For his part, Petitioner merely apologized "for what [he had] done and what [he had] caused." (Sent'g. Tr. 13). Counsel for the Government disagreed with certain of defense counsel's representations and requested a sentence within the recommended Guidelines range. (Sent'g Tr. 16). Ultimately, the Court sentenced Petitioner to 188 months imprisonment. (Sent'g Tr. 17).

Petitioner initially did not appeal his case but instead filed his first Motion to Vacate arguing that his attorney had failed to honor his request for an appeal. (Case No. 5:06CV74-3-V, document # 1). Pursuant to the relevant legal precedent, and out of an abundance of caution, on June 22, 2006, the Court entered an Order granting that Motion to Vacate and agreeing to re-enter its original Judgment for the sole purpose of allowing Petitioner to take a belated appeal. (Case No. 5:06CV74-3-V, document # 2). After the Judgment was re-entered Petitioner timely noted his appeal to the Fourth Circuit Court of Appeals.

On appeal, Petitioner's attorney argued that this Court erred in imposing the two enhancements based upon facts which the Court found on its own. United States v. Ellison, 235 F3d. App'x 132, 133 (4th Cir. Aug. 9, 2007) (unpublished per curiam). However, the Circuit Court determined that this Court properly had relied upon information from the PSR once Petitioner failed affirmatively to show that the subject information was

7

inaccurate.  Id.

Appellate counsel also argued that Petitioner's sentence procedurally was unreasonable because this Court failed to articulate its consideration of the factors set forth in 18 U.S.C. § 3553(a).  Id.  However, the Appellate Court first stated that sentencing courts are expected to calculate and consider the advisory Guidelines sentencing range in conjunction with the factors listed in § 3553(a).  Id.  The Court next stated, in any case, that "a sentence within the proper advisory Guidelines range is presumptively reasonable." Id., quoting United States v. Johnson, 445 F.3d 339, 341 (4th Cir. 2006).  Thus, the Court stated that in cases where the advisory term is imposed, as was done here, a defendant can only attack his sentence upon a showing that the sentence is unreasonable because the Court provided "an inadequate statement of reasons" for the sentence.  Id. at 134, quoting United States v. Moreland, 437 F.3d 424, 434 (4th Cir.).  In evaluating such statement of reasons, the Court of Appeals noted that the "context surrounding a district court's explanation may imbue it with enough content for [the Appellate Court] to evaluate both whether the [district] court considered the [relevant] factors and whether it did so properly.  Id. (citation omitted).

Applying those principles, the Court of Appeals concluded that Petitioner had failed to overcome the presumption of rea-

sonableness which was attached to his properly calculated sentence.  Id.  Therefore, the Court of Appeals found that the sentence was reasonable and affirmed the sentence in its entirety.  Id.

Petitioner now has returned to this Court on this second, properly filed Motion to Vacate arguing that trial counsel was ineffective for erroneously advising/promising Petitioner that if he pled guilty, he would receive a 10-year sentence; and that this Court erroneously sentenced him as if the Guidelines were mandatory, in violation of United States v. Booker, 543 U.S. 220 (2005).  However, the Court carefully has reviewed Petitioner's claims and arguments along with the relevant legal precedent, and determined, this time, that the Motion must be summarily dismissed for its failure to state a claim for relief.

## II.  **ANALYSIS**

At the outset of its analysis, the Court notes that after conviction and exhaustion, or waiver of any right to appeal, courts and the public can presume that defendants stand fairly and finally convicted.  See United States v. Frady, 456 U.S. 152, 164 (1982).  Thus, while prisoners in federal custody may attack the validity of their sentences pursuant to 28 U.S.C. § 2255, the law is clear that such proceedings are not intended to serve the same functions as an appeal.  Id. at 165.

Therefore, Rule 4(b) of the Rules Governing Section 2255

9

Proceedings, directs sentencing courts promptly to examine motions to vacate in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. When it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that a petitioner is not entitled to relief, a court must dismiss the motion.

**1. Petitioner's Booker claim is barred.**

Turning back to the Motion and taking the claims out of turn, Petitioner's second claim alleges that this Court erroneously treated the Sentencing Guidelines as though they were mandatory, in violation of Booker. However, this claim must be rejected for at least two reasons.

Indeed, as previously was noted, Petitioner's belated direct appeal challenged this Court's sentencing procedure, arguing that the undersigned had failed to consider the relevant statutory factors in calculating his sentence. Ellison, 235 Fed. App'x at 134. Such an argument logically can be construed as a claim that the Court treated the Guidelines as mandatory -- in violation of Booker -- by failing to consult the statutory factors. Under those circumstances, then, Petitioner's current claim is procedurally barred. That is, the law is well settled that in the absence of a favorable, intervening change in the law which can be applied on collateral review, a petitioner simply is not free to re-litigate claims which already were rejected on direct

review.  Davis v. United States, 417 U.S. 333, 342 (1974); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976).

In the alternative, to the extent that it can be concluded that Petitioner's Booker claim was not raised and rejected on direct review, he still cannot establish that the claim is cognizable in this proceeding.

That is, Petitioner's failure directly to have raised this Booker claim would constitute a procedural default, which default he has not even attempted to overcome.  See United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999) ("[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack"); see also Bousley v. United States, 523 U.S. 614, 621 (1998) (failure to challenge matter on direct appeal, absent certain compelling circumstances, bars collateral review of same).  To put it another way, in order to secure collateral review on this claim of sentencing error, Petitioner now must show "that the error worked to his actual and substantial disadvantage, not merely that the error created a possibility of prejudice."  Satcher v. Pruett, 126 F.2d 561, 572 (4th Cir. 1997) citing Murray v. Carrier, 477 U.S. 478, 494

11

(1986).

Suffice it to say, Petitioner has failed to meet either of the foregoing prerequisites. Therefore, Petitioner's second claim is barred from this Court's review.

### 2. **Petitioner's claim that counsel was ineffective also must fail**.

By his other claim, Petitioner alleges that counsel was ineffective for having erroneously advised/promised him that his guilty pleas would secure him a ten-year sentence. However, this claim also must be rejected.

With respect to claims of ineffective assistance of counsel, Petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields, 956 F.2d at 1297-99; Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977).

Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If Petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at

12

697. Moreover, in considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

More critically, inasmuch as Petitioner has alleged ineffective assistance of counsel following the entry of his guilty plea, he has a different burden to meet. See Hill v. Lockhart, 474 U.S. at 53-59; Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit described a petitioner's burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that there is a reasonable probability that, but for counsel's errors, <u>he would not have pleaded guilty and would have insisted on going to trial</u>."

Hooper, 845 F.2d at 475 (emphasis added); accord Hill v. Lockhart, 474 U.S. at 59-60; and Fields, 956 F.2d at 1297. Critically, however, if a petitioner fails to meet his burden of demonstrating prejudice, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland,

13

466 U.S. at 697.

Thus, "the central inquiry" is whether, but for counsel's alleged errors, this Petitioner would have insisted on a trial. Slavek v. Kinkle, 359 F.Supp.2d 473, 491 (E.D. Va. 2005) (summarily rejecting claims of ineffectiveness on prejudice prong based on petitioner's failure and inability to argue that but for alleged errors, he would have insisted on going to trial). Courts have stated that this inquiry is an "objective one based on whether going to trial might reasonably have resulted in a different outcome." Martin v. United States, 395 F.Supp. 2d 326, 329 (D. S.C. 2005). See also Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001) (finding that in light of overwhelming evidence of guilt and lack of available defenses, petitioner could not establish prejudice under the modified "reasonable probability" standard); and Burket v. Angelone, 208 F.3d 172, 190-91 (4th Cir. 2000) (same).

Finally, with respect to claims of this nature, it must firmly be kept in mind that "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978). Similarly, the requirement "[t]hat a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." McMann v. Richardson, 397 U.S. 759, 770 (1970).

In the instant case, Petitioner asserts that his attorney was ineffective because he predicted and/or promised that Petitioner would receive a 10-year sentence upon his conviction for the two offenses. Further, Petitioner claims he relied upon such representation in making his decision to plead guilty. According to Petitioner, he would have faired no worse had he been convicted after a jury trial. The Court's review, however, shows that Petitioner's argument misapprehends both the relevant facts and the law.

Indeed, notwithstanding any statements which counsel may have made concerning the length of Petitioner's sentence, the record shows that Petitioner twice was correctly advised by the Court of his sentencing exposure. First, during his arraignment proceeding on December 29, 2004, the Court advised Petitioner that he was facing a **minimum** of ten years imprisonment on Count One. Then, during his Plea and Rule 11 Hearing –- **but prior to the time that he actually tendered his guilty pleas** -- the Court advised Petitioner that he was facing a statutory mandatory **minimum** term of ten years up to life imprisonment if convicted of the conspiracy charge. (Sent'g. Tr. 6). Moreover, as was previously stated, during his plea colloquy, Petitioner swore to the Court that he had spoken to his attorney about how the Sentencing Guidelines might have applied in his case; that he understood that the Court would not be able to determine his sentencing

15

range until after his PSR was prepared and challenged by the attorneys; and that he understood that even if his sentence was more severe than he was expecting, he still would not have been entitled to withdraw his guilty pleas. Equally critically, during Petitioner's Sentencing Hearing, he advised the Court both that he and counsel had reviewed his PSR, which review necessarily would have included the recommended sentencing range of 188 to 235 months imprisonment; and that he still was satisfied with his attorney's services, notwithstanding that such recommendation differed from counsel's alleged prediction and/or promise.

In any case, because any misinformation which Petitioner may have received from counsel was clarified if not corrected by the information which he received from the Court on two occasions, he cannot establish any prejudice from counsel's performance. See United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992) (rejecting a claim of ineffective assistance of counsel base upon inaccurate sentencing predictions where trial court's sentencing remarks were accurate, thereby negating counsel's remarks); United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995) (same); and United States v. Craig, 985 F.2d 175, 179-80 (4th Cir. 1993) (holding that "mis-advice respecting sentencing possibilities" could not be a "but for" cause of a guilty plea where the plea is "based on risk information given. . . by the sentencing court.").

The Court further notes that Petitioner has not pointed to any evidence which he would have presented to secure an acquittal. In fact, the PSR tends to establish that had Petitioner gone to trial, the Government likely would have presented testimony from his five cooperating co-conspirators concerning his involvement in the subject offenses. The Government also likely would have presented testimony from the law enforcement officers who arrested Petitioner at the home where methamphetamine was manufactured, where another armed co-conspirator was arrested, and from where drugs actually were seized. Thus, on this record, the Court finds it more likely than not that Petitioner would have been convicted.

In contrast, Petitioner's guilty pleas earned him a 3-point reduction in his Total Offense Level from 34 not 37, and it reduced his sentencing range from 262 to 327 down to 188 to 235 months imprisonment. Thus, even assuming, arguendo, that counsel's performance was deficient, in light of Petitioner's failure to identify any evidence which could have exonerated him, he cannot establish that there is a reasonable probability that, but for counsel's alleged ineffectiveness, he would have received a different, more favorable outcome from a trial. Consequently, Petitioner's claim against counsel cannot be sustained.

### III. CONCLUSION

The Court has considered Petitioner's arguments, the entire

17

record of this matter and the relevant legal precedent, and has found that he is not entitled to any relief on either of his two claims. Therefore, Petitioner's Motion to Vacate will be <u>denied</u> and <u>dismissed</u>.

### IV. <u>ORDER</u>

**IT IS, THEREFORE, ORDERED THAT** Petitioner's Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: March 13, 2009

Richard L. Voorhees
United States District Judge